**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LINDA LEPINE, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>--against--<br><br>CARETRACKER, INC., N. HARRIS COMPUTER CORPORATION and HARRIS HEALTHCARE HOLDINGS INC.,<br><br>Defendants. | Case No.<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Linda Lepine, individually and on behalf of all others similarly situated, by and through undersigned counsel, alleges, upon personal knowledge as to her own acts and experiences and, where indicated, upon information and good faith belief, against CareTracker, Inc. d/b/a CareTracker and/or Harris CareTracker ("CareTracker"), N. Harris Computer Corporation and Harris Healthcare Holdings Inc. d/b/a Harris Healthcare ("Harris Healthcare" and collectively with CareTracker and N. Harris Computer Corporation, "Defendants") the following:

## NATURE OF THE ACTION

1. Plaintiff brings this class action lawsuit on behalf of a class of persons impacted by Defendants' failure to safeguard, monitor, and maintain and protect highly sensitive Personal Health Information ("PHI") and Personally Identifiable Information ("PII") (collectively, "Sensitive Information") of their clients' patients.

2. Defendant CareTracker is a provider of practice management solutions such as Software as a Service (SaaS) platform and cloud-based, integrated electronic health records software for physician practices in the United States.

3. Defendant N. Harris Computer Corporation, a Canadian company, acquired

CareTracker in 2014.[1]

4. Defendant Harris Healthcare specializes in providing information technology solutions tailored for healthcare organizations in the United States and across the world.

5. On n August 18, 2025, Defendant CareTracker disclosed to the U.S. Department of Health and Human Services ("HHS"), cybercriminals compromised Sensitive Information of at least 501 individuals (the "Data Breach") – which is likely a placeholder for a much higher number of victims, with the final count still pending completion of Defendants' investigation into the Data Breach.

6. The Sensitive Information believed compromised in the Data Breach is highly sensitive patient data which included, upon information and good faith belief, patients' full names, phone numbers, email addresses, dates of birth, driver's license numbers, Social Security numbers, credit card information, bank account information, health insurance details, clinical diagnoses and/or conditions, lab results, and medications.

7. The type of highly sensitive information impacted by the Data Breach is a gold mine for data thieves because it can be used to orchestrate a wide range of fraudulent activities, including medical insurance fraud, financial fraud, and identity theft.

8. As a result of Defendants' actions and inactions, Plaintiff and Class Members have been forced to undertake time-consuming and costly efforts to mitigate the actual and potential harm caused by the Data Breach's exposure of their PHI and PII, including placing freezes and alerts with credit reporting agencies, contacting their financial institutions and health insurance providers, closing or modifying financial accounts, and monitoring their credit reports and

---

[1] https://www.harrishealthcare.com/news/press-release/constellation-software-acquires-caretracker-inc/

accounts for unauthorized activity.

9. Defendants have yet to provide direct notice to individuals' impacted by the Data Breach.

10. Plaintiff and Class Members were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm from identity theft and other fraudulent misuse of their Sensitive Information, the loss of the benefit of their bargain, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach. The risk will remain for their respective lifetimes.

11. Throughout this Complaint, allegations against Defendants are made jointly and severally. On information and good faith belief, Defendants operate as an integrated enterprise and share common ownership, officers, directors, managers, and/or administrators, as well as information systems, cybersecurity protocols, privacy policies, and information security practices.

12. Therefore, the Data Breach resulted from Defendants' shared cybersecurity failures and affected patient and clients' patient information that was accessible across Defendants' integrated network(s). As such, Defendants are jointly and severally liable for the claims alleged herein.

13. As such, Plaintiff and Class Members bring this action to recover for the harm they suffered and assert the following claims: (i) Negligence, (ii) Negligence *per se*, (iii) Invasion of Privacy, (iv) Breach of Implied Contract, (v) Unjust Enrichment, (vi) Breach of Fiduciary Duty, (vii) Invasion of Privacy, (viii) Violation of the California Customer Records Act, Cal. Civ. Code §§ 1798.80 *et seq*. and (ix) Violation of the California Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56, *et seq*.

## PARTIES

14. Plaintiff Linda Lepine is a natural person and citizen of California, residing in Seaside, California.

15. Defendant CareTracker, Inc. d/b/a CareTracker is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 2429 Military Road, Suite 300, Niagara Falls, New York, 14304.

16. Defendant N. Harris Computer Corporation is a Canadian corporation with its principal place of business in the United States at 2429 Military Road, Suite 300, Niagara Falls, New York, 14304.

17. Defendant Harris Healthcare Holdings Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 2429 Military Road, Suite 300, Niagara Falls, New York, 14304.

18. Upon information and good faith belief, Defendants CareTracker, Inc. and Harris Healthcare Holdings Inc. are wholly-owned subsidiaries of Defendant N. Harris Computer Corporation.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is more than 100 and at least one member of the Class defined below is a citizen of a different state that is diverse from Defendants' citizenship, including Plaintiff. Thus, minimal diversity exists under 28 U.S.C. § 1332 (d) (2) (A). Defendants have their principal place of business located in this District.

20. This Court has personal jurisdiction over Defendants because Defendants maintain

their principal place of business in this District.

21. Venue is proper in this Court because Defendants' principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## COMMON FACTUAL ALLEGATIONS

### A. Defendants Collected, Maintained and Stored Sensitive Information.

22. Defendants provide a cloud-based, integrated electronic health record and practice management solutions for medical practices throughout the United States.

23. In the course of providing their business services, Defendants demand, request, receive, maintain, and store large volumes of patient sensitive personal health information and personally identifiable information from their clients.

24. By collecting and storing this information, Defendants assume a duty to securely maintain and protect their clients' patients' PHI and PII.

25. The PHI and PII that Defendants maintain is highly sensitive and valuable, making CareTracker a particularly attractive target for cybercriminals seeking to obtain and misuse or sell patient data.

26. Upon information and belief, Defendants made promises and representations to their clients and clients' patients including Plaintiff and Class Members, that the PII and PHI collected from them would be kept safe and confidential, and that the privacy of that information would be maintained.

27. Plaintiff and Class Members relied on Defendants to implement and maintain reasonable and adequate security measures to keep their PHI and PII secure and protected from unauthorized access.

**B. <u>CareTracker Data Breach</u>**

28. Defendants derive a substantial economic benefit from providing health care management services to their clients, and as a part of providing those services, Defendants retain and store Plaintiff's and Class Members' Sensitive Information.

29. By obtaining, collecting, and storing the Sensitive Information of Plaintiff and Class Members, Defendants assumed legal and equitable duties and knew or should have known they were responsible for protecting the Sensitive Information from disclosure.

30. Upon information and belief, Defendants made promises to clients as well as Plaintiff and Class Members to maintain and protect Plaintiff's and Class Members' Sensitive Information, demonstrating an understanding of the importance of securing Sensitive Information.

31. On August 18, 2025, Defendants disclosed to HHS that CareTracker experienced a Data Breach that compromised individuals' Sensitive Information.

32. While the total number of impacted individuals has not been released, upon information and belief, thousands of individuals were impacted. Upon information and belief, the following types of Sensitive Information were compromised as a result of the Data Breach include names, contact and demographic information, dates of birth, Social Security numbers, driver's license or state ID numbers, health insurance details, medical records and payment information.

33. Defendants could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the Sensitive Information of Plaintiff and Class Members.

34. Defendants did not use reasonable security procedures and practices appropriate to

the nature of the sensitive information they were maintaining for Plaintiff and Class Members, causing the exposure of Sensitive Information, such as encrypting the information or deleting it when it is no longer needed.

35. As a result, criminal actors accessed and stolen files containing unencrypted Sensitive Information of Plaintiff and Class Members.

36. Upon information and good faith belief, at the time of the filing of the Complaint, Defendants still have not finished their investigation of the Data Breach and have not notified all Class Members that their Sensitive Information has been stolen.

37. Upon information and belief, Plaintiff's Sensitive Information, and that of Class Members, has been or is about to be published on the dark web as a result of the Data Breach.

## C. Defendants Knew or Should Have Known of the Risk Because Institutions in Possession of Sensitive Information.

38. Given that Defendants were storing the Sensitive Information of Plaintiff and Class Members and knew or should have known of the serious risk and harm caused by a data breach, Defendants were obligated to implement reasonable measures to prevent and detect cyber-attacks, such as those recommended by the Federal Trade Commission (the "FTC"), required by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and promoted by data security experts and other agencies.

39. That obligation stems from the foreseeable risk of a data breach given that Defendants collected, stored, and had access to a swath of highly sensitive patient and employee records and data and, additionally, because other highly publicized data breaches at numerous healthcare institutions put Defendants on notice that the personal and sensitive data it stores might be targeted by cybercriminals.

40. Indeed, cyberattacks on medical systems and healthcare companies like Defendants have become so notorious that the Federal Bureau of Investigation and United States Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive … because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[2]

41. In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations experienced cyberattacks in recent years.[3]

42. Therefore, the increase in such attacks, and the attendant risk of future attacks, was widely known to the public and therefore to anyone in Defendants' industry, including Defendants.

43. Despite the abundance and availability of information regarding cybersecurity best practices for the healthcare industry and the prevalence of healthcare data breaches, Defendants inexplicably failed to adopt sufficient data security process by, without limitation:

a. Failing to properly select their information security partners;

b. Failing to ensure the proper monitoring and logging of the ingress and egress of network traffic;

c. Failing to ensure the proper monitoring and logging of file access and modifications;

d. Failing to ensure the proper training their and their technology partners' employees as to cybersecurity best practices;

---

[2] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomeware,* Law360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomeware (last visited Sept. 6, 2025).

[3] *See* Maria Henriquez*, Iowa City Hospital Suffers Phishing Attack,* Security Magazine (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack (last visited Sept. 6, 2025).

e. Failing to ensure fair, reasonable, or adequate computer systems and data security practices to safeguard the PII and PHI of Plaintiff and Class Members;

f. Failure to timely and accurately that Plaintiff's and Class Members' PII and PHI had been improperly acquired or accessed;

g. Knowingly disregarding standard information security principles, despite obvious risks, by allowing unmonitored and unrestricted access to unsecured PII and PHI; and

h. Failing to provide adequate supervision and oversight of the PII and PHI with which they were and are entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PII and PHI of Plaintiff and Class Members, misuse the PHI/PII and potentially disclose it to others without consent.

44. Upon information and belief, Defendants further failed to ensure the proper implementation of sufficient processes to quickly detect and respond to data security incidents, to ensure the proper encryption of Plaintiff's and Class Members' Sensitive Information, and to monitor user behavior and activity to identify possible threats.

45. Time is of the essence when highly sensitive PII and PHI is subject to unauthorized access and/or acquisition.

46. The disclosed, accessed, and/or acquired PII and PHI of Plaintiff and Class Members is, upon information and good faith belief, already available on the Dark Web.

47. Hackers can access and then offer for sale the unencrypted, unredacted PII and PHI to criminals.

48. Plaintiff and Class Members are now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from the publication of their PHI and PII onto the Dark Web.

49. Plaintiff and Class Members now face a lifetime risk of identity theft, which is heightened here by unauthorized access, disclosure, and/or activity by cybercriminals on computer systems containing sensitive personal information.

50. Despite the highly sensitive nature of the information that Defendants obtained, maintained, and stored and the prevalence of healthcare data breaches, Defendants inexplicably failed to take appropriate steps to safeguard the Sensitive Information of Plaintiff and Class Members from being compromised.

51. The Data Breach itself, and information Defendants have disclosed about the breach to date, including the need to remediate Defendants' cybersecurity and the sensitive nature of the impacted data collectively demonstrate Defendants failed to implement reasonable measures to prevent cyber-attacks and exposure of the Sensitive Information they oversaw.

**D. <u>MFMA Failed to Comply with FTC Guidelines.</u>**

52. The FTC recognizes that consumer data is a lucrative (and valuable) form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour underscored this point by reiterating that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."[4]

53. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

---

[4] Pamela Jones Harbour, *Remarks Before FTC Exploring Privacy Roundtable* (Dec. 7, 2009), https://www.ftc.gov/news-events/news/speeches/remarks-ftc-exploring-privacy-roundtable (last visited Sept. 6, 2025).

54. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for business.

55. Those guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[5]

56. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[6]

57. The FTC has also issued, and regularly updates, guidelines for businesses to implement reasonable data security practices and incorporate security into all areas of the business.

58. According to the FTC, reasonable data security protocols require:

a. Encrypting the information stored on computer networks;

b. Retaining payment card information only as long as necessary;

c. Properly disposing of personal information that is no longer needed or can be disposed pursuant to relevant state and federal laws;

d. Limiting administrative access to business systems;

e. Using industry unapproved activity;

---

[5] *Protecting Personal Information: A Guide for Business* (2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited Sept. 6, 2025).
[6] *Start with Security: A Guide for Business* (2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited Sept. 6, 2025).

f. Monitoring activity on networks to uncover unapproved activity;

g. Verifying that privacy and security features function properly;

h. Testing for common vulnerabilities; and

i. Updating and patching third-party software.[7]

59. The FTC cautions businesses that failure to protect Sensitive Information and the resulting data breaches can destroy consumers' finances, credit history, and reputations, and can take time, money, and patience to resolve the effect.[8] Indeed, the FTC treats the failure to implement reasonable and adequate data security measures-like Defendants failed to do here-as an unfair act prohibited by Section 5(a) of the FTC Act.

60. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act of practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45.

61. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

62. These FTC enforcement actions include actions against healthcare providers and partners like Defendants.

63. Defendants failed to properly implement basic data security practices.

---

[7] *Id.*

[8] *See Taking Charge, What to Do if Your Identity is Stolen*, at 3 (Jan. 2012), https://www.ojp.gov/ncjrs/virtual-library/abstracts/taking-charge-what-do-if-your-identity-stolen (last visited Sept. 6, 2025).

64. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to customer's Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

65. Plaintiff alleges, upon information and good faith belief, that Defendants were at all times fully aware of the obligation to protect the Sensitive Information of their clients' patients. Defendants were also aware of the significant repercussions that would result from their failure to do so.

**E. Defendants Failed to Comply with Industry Standards.**

66. As shown above, experts studying cybersecurity routinely identify healthcare providers as being particularly vulnerable to cyberattacks because of the value of the Sensitive Information which they collect and maintain.

67. Several best practices have been identified that at a minimum should be implemented by healthcare services providers like Defendants, including but not limited to educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and ant-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limited which employees can access sensitive data.

68. The United States Government and the United States Cybersecurity & Infrastructure Agency recommend several similar and supplemental measures to prevent and detect cyberattacks, including, but not limited to: implement an awareness and training program, enabling strong spam filters, scanning incoming and outgoing emails, configuring firewalls, automating anti-virus and anti-malware programs, managing privileged accounts, configuring access controls, disabling remote desktop protocol, and updating and patching computers.

69. Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

70. Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1[9] (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet's Critical Security Controls[10] (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

71. The FBI's Internet Crime Complaint (IC3) 2019 estimated that there was more than $3.5 billion in losses to individual and business victims due to identity fraud in that year alone. That same report identified "rapid reporting" as a tool to help law enforcement stop fraudulent transactions and mitigate losses.

72. These foregoing frameworks are existing and applicable industry standards in the healthcare industry, and Defendants failed to comply with these accepted standards, thereby opening the door to the cyber incident and causing the Data Breach.

**F. <u>Defendants' Conduct and Insufficient Data Security Violate HIPAA.</u>**

---

[9] Nat'l Inst. of Standards & Tech., *Framework for Improving Critical Infrastructure Cybersecurity*(2018), https://nvlpubs.nist.gov/nistpubs/cswp/nist.cswp.04162018.pdf (last visited Sept. 6, 2025).

[10] *See The 18 CIS Critical Security Controls*, https://www.cisecurity.org/controls/cis-controls-list (last visited Sept. 6, 2025).

73. The Health Insurance Portability and Accountability Act of 1996 requires covered entities to protect against reasonably anticipated threats to the security of sensitive patient health information.

74. Covered entities must implement safeguards to ensure the confidentiality and availability of PII and PHI. Safeguards must include physical, technical, and administrative components.[11]

75. Title II of HIPAA contains what are known as the Administrative Simplification provisions.[12] These provisions require, among other things, that the U.S. Department of Health and Human Services creates rule to streamline the standards for handling PII and PHI, like the data Defendants left unguarded.

76. The HHS subsequently promulgated multiple regulations under the authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. §164.306(a)(1)-(4); 45 C.F.R. §164.308(1)(i); 45 C.F.R. §164.308(a)(1)(ii)(D), and 45 C.F.R. §164.530(b).

77. A data breach, such as the one Defendants experienced, is considered a breach under the HIPAA rules because there is an access of PHI not permitted under the HIPAA Privacy Rule. A breach under the HIPAA Rules is defined as, "the acquisition, access, use, or disclosure of PHI in a manner not permitted under [the HIPAA Privacy Rule] which compromises the privacy of the PHI."[13]

---

[11] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

[12] 42 U.S.C. § 1301, *et seq.*

[13] *See* C.F.R. § 164.40.

78. The Data Breach resulted from a combination of insufficiencies that demonstrate that Defendants failed to comply with safeguards maintained by HIPAA regulations.

79. Furthermore, persons, including healthcare services providers, that receive information from a confidential communication or record, as described above, "may not disclose the information except to the extent that disclosure is consistent with the authorized purposes for which the information was first obtained."[14]

80. Defendants' Data Breach and unauthorized disclosure of Plaintiff's and Class Members' Sensitive Information to malicious third parties violated Plaintiff's and Class Members' rights to privacy and confidentiality in their receipt of healthcare services and fell below the applicable standards for safeguarding the confidential Sensitive Information of Plaintiff and Class Members.

## G. <u>The Data Breach Resulted from Defendants' Failure to Properly Maintain and Safeguard Their Systems and Data</u>

81. Defendants breached their obligations to Plaintiff and Class Members and/or were otherwise negligent and reckless because they failed to properly maintain and safeguard their computer systems and data.

82. Defendants' unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a. Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b. Failing to adequately protect clients' patients' Sensitive Information;

c. Failing to properly monitor their own data security systems for existing intrusions;

d. Failing to ensure that their vendors with access to their computer systems employed reasonable security procedures;

[14] *Id.* § 159.002(c).

e. Failing to detect unauthorized ingress into their systems;

f. Failing to implement and monitor reasonable network segmentation to detect unauthorized travel within their systems, including to and from areas containing the most sensitive data;

g. Failing to detect unauthorized exfiltration of the most sensitive data on their systems;

h. Failing to train their employees in the proper handling of emails containing Sensitive Information and maintain adequate email security practices;

i. Failing to ensure the confidentiality and integrity of electronic PHI they created, received, maintained, and/or transmitted, in violation of 45 C.F.R. §164.306(a)(1);

j. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. §164.312(a)(1);

k. Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. §164.308(a)(1)(i);

l. Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. §164.308(a)(1)(ii)(D);

m. Failing to protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. §164.306(a)(3);

n. Failing to ensure compliance with HIPAA security standard rules by their workforce in violation of 45 C.F.R. §164.306(a)(4);

o. Failing to train all members of their workforce effectively on the policies and procedures regarding PHI as necessary and appropriate for the members of its workforces to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. §164.530(b);

p. Failing to render the electronic PHI they maintained unusable, unreadable, or indecipherable to unauthorized individuals, as they had not encrypted the electronic PHI as specified in the HIPAA Security Rule by "the use of an algorithmic process

to transform data into a form in which there is a low probability of assigning meaning without the use of a confidential process or key"15;

q. Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act; and

r. Otherwise breaching their duties and obligations to protect Plaintiff's and Class Members' Sensitive Information.

83. Defendants negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Sensitive Information. Accordingly, as outlined below, Plaintiff and Class Members now face actual fraud and identity theft as well as increased risk of fraud and identity theft. In addition, Plaintiff and Class Members lost the benefit of the bargain they made with Defendants.

## H. Cyberattacks and Data Breaches Cause Disruption and Put Victims at an Increased Risk of Fraud and Identity Theft.

84. Cyberattacks and data breaches at healthcare companies like Defendants are especially problematic because they can negatively impact the overall daily lives of individuals affected by the attack.

85. Researchers have found that among medical services providers that experience a data security incident, the death rate among patients increased in the months and years after the attack.[16]

86. Researchers have further found that at medical service providers that experienced a data security incident, the incident was associated with deterioration in timeliness and patient outcomes, generally.[17]

[15] 45 C.F.R. §164.304.

[16] *See* Nsikan Akpan, *Ransomware and Data Breaches Linked to Uptick in Fatal Heart Attacks,* PBS (Oct. 24, 2019), https://www.pbs.org/newshour/science/ransomeware-and-other-data-breaches-linked-to-uptick-in-fatal-heart-attacks (last visited Sept. 6, 2025).

87. The United States Government Accountability Office released a report in 2007 regarding data breaches in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[18]

88. That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal personally identifiable information is to monetize it.

89. They do this by selling the spoils of their cyberattacks on the black market to identify thieves who desire to extort and harass victims, take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate piece of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim.

90. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique called "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security Number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

---

[17] *See* Sung J. Choi *et al.*, *Data Breach Remediation Efforts and Their Implications for Hospital Quality*, 54 Health Services Res. 971, 971-80 (2019), https://www.onlinelibrary.wiley.com/doi/full/10.1111/1475-6773.13203 (last visited Sept. 6, 2025)..

[18] *See* GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, at 2 (2007), https://www.gao.gov/new.items/d07737.pdf ("GAO Report") (last visited Sept. 6, 2025).

91. The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (and consider an extended fraud alert that lasts for 7 years if someone steal their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[19]

92. Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

93. Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information.

94. In addition, thieves may obtain a job using the victim's Social Security Number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an issued victim's name.

95. Moreover, theft of PII is also gravely serious because PII is an extremely valuable property right.[20]

[19] *See IdentityTheft.gov/Steps,* "https://www.identitytheft.gov/steps" (last visited Sept. 6, 2025).

[20] *See, e.g.,* John T. Soma *et al.*, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets,* 15 Rich J.L. & Tech. 11, at 3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets." (citations omitted).

96. Its value is axiomatic, considering the value of "big data" in corporate America and the fact that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that PII has considerable market value.[21]

97. Theft of PHI, in particular, is gravely serious. A thief may use customers' and patients' name or health insurance numbers "to see a doctor, get prescription drugs, buy medical devices, submit claims with [an] insurance provider, or get other medical care. If the thief's health information is mixed with yours, it could affect the medical care you're able to get or the health insurance benefits you're able to sue. It could also hurt your credit."[22]

98. Drug manufacturers, medical device manufacturers, pharmacies, hospitals, and other healthcare service providers often purchase Sensitive Information on the black market for the purpose of target-marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

99. There may additionally be a substantial time lag—measured in years—between when harm occurs and when it is discovered, and also between when Sensitive Information and/or financial information is stolen and when it is used.

100. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting

[21] *Id.*

[22] *What to Know About Medical Identity Theft,* https://www.ftc.gov/articles/what-know-about-medical-identity-theft.

from data breaches cannot necessarily rule out all future harm.[23]

101. PII and PHI is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

102. There is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

103. Plaintiff and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

104. PHI can sell for as much as $363 per record according to the Infosec Institute.[24]

105. PII is particularly valuable because criminals can use it to target victims with frauds and scams. Once PII is stolen, fraudulent use of the information and damage to victims may continue for years.

106. For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines.[25] Such fraud may go undetected until debt collection calls commence months, or even years, later.

107. Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.

---

[23] *The GAO Report*, *supra n.*22, at 29.

[24] Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, Infosec (July 27, 2015), https://www.resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market (last visited Sept. 6, 2025).

[25] *Identity Theft and Your Social Security Number* (2021), https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Sept. 6, 2025).

108. Each of these fraudulent activities is difficult to detect.

109. An individual may not know that his or her Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud.

110. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

111. Moreover, it is not an easy task to change or cancel a stolen Social Security number.

112. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[26]

113. This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at the cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[27]

114. Medical information is also especially valuable to identity thieves.

---

[26] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back* (Feb. 9, 2015), https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identtiy-theft (last visited Sept. 6, 2025).

[27] Tim Greene, *Anthem hack: Personal Data stolen sells for 10x price of stolen credit card numbers* (Feb 6. 2015), https://www.networkworld.com/article/935334/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Sept. 6, 2025).

115. According to account monitoring company LogDog, coveted Social Security numbers were selling on the dark web for just $1 in 2016 – the same as a Facebook account.[28] That pales in comparison with the asking price for medical data, which was selling for $50 and up.[29]

116. Because of the value of its collected and stored data, the medical industry has experienced disproportionally higher numbers of data theft events than other industries.

117. For this reason, Defendants knew or should have known about these dangers and strengthened their data systems and data security measures accordingly. Defendants were put on notice of the substantial and foreseeable risk of harm from a data breach, yet they failed to properly prepare for that risk.

**I. <u>Plaintiff's and Class Members' Damages.</u>**

118. Upon information and good faith belief, Plaintiff and Class Members have been damaged by the compromise of their Sensitive Information in the Data Breach which is now in the hands of cybercriminals who accessed the data Defendants held within their systems.

119. Upon information and good faith belief, the Sensitive Information exposed included the names, phone numbers, addresses, dates of birth, Social Security Numbers, financial account information, medical record numbers, health insurance, diagnosis and treatment information of current and former healthcare patients of Defendants and their clients.

---

[28] S*ee* Omri Toppol, *Email Security: How You Are Doing It Wrong & Paying Too Much* (Feb. 14, 2016), https://getlogdog.com/blogdog/email-security-you-are-doing-it-wrong/ (last visited Sept. 6, 2025).

[29] Lisa Vaas, *Ransomware Attacks Paralyze, and Sometimes Crush, Hospitals,* Naked Security (Oct. 3, 2019) https://news.sophos.com/en-us/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/ (last visited Sept. 6, 2025).

120. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been placed at a present, imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

121. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach, valuable time Plaintiff and Class Members otherwise would have spent on other activities, including but not limited to work and/or recreation.

122. Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

123. Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Sensitive Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

124. Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

125. Plaintiff and Class Members also suffered a loss of value of their Sensitive Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

126. Plaintiff and Class Members were also damaged via benefit-of-the-bargain damages. Plaintiff and Class Members who are current or former patients of Defendants' clients

overpaid for a service that was intended to be accompanied by adequate data security that complied with industry standards.

127. Part of the price Plaintiff and Class Members paid to Defendants was intended to be used by Defendants to fund adequate data security practices to safeguard Plaintiff's and Class Members' Sensitive Information. As demonstrated by the Data Breach, Defendants failed to fund and provide adequate data security practices. Thus, Plaintiff and the Class Members who are current or former patients of Defendants' clients did not get what they paid for and agreed to.

128. Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably spent to remedy or mitigate the effects of the Data Breach relating to:

a. Reviewing and monitoring sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

b. Purchasing credit monitoring and identity theft prevention;

c. Placing "freezes" and "alerts" with reporting agencies;

d. Spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

e. Contacting financial institutions and closing or modifying financial accounts; and,

f. Closely reviewing and monitoring their medical insurance accounts, bank accounts, and credit reports, as well as alerts for identity fraud including their SSNs, for unauthorized activity for years to come.

129. Moreover, Plaintiff and Class Members have an interest in ensuring that their Sensitive Information, which is believed to remain in the possession of Defendants, is protected from further breaches by the implementation of security measures and safeguards, including but

not limited to, making sure that the storage of data or documents containing Sensitive Information is not accessible online or otherwise to unauthorized third parties.

130. Further, as a result of Defendants' conduct, Plaintiff and Class Members are forced to live with the anxiety that their Sensitive Information—which contains the most intimate details about a person's life, including what ailments they suffer, whether physical or mental—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

131. As a direct and proximate result of Defendants' actions and omissions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

**REPRESENTATIVE PLAINTIFF LEPINE'S EXPERIENCE**

132. Plaintiff Linda Lepine has been a patient of Defendant CareTracker client Montage Health since approximately 2014.

133. As a condition of receiving healthcare services, in or about 2022 Plaintiff was required to provide her sensitive personal and medical information to Defendants and their client, including but not limited to, her name, Social Security number, contact information, and date of birth.

134. As part of providing their business services, Defendants also received access to and collected Plaintiff's sensitive health information during her visit to the Montage Health emergency department, including her medical conditions, treatments, diagnoses, and test results.

135. Plaintiff provided her Sensitive Information to Defendants with the reasonable expectation that Defendants would protect and secure this information from unauthorized access and disclosure.

136. Upon information and belief, Plaintiff's Sensitive information was compromised in the Data Breach.

137. Plaintiff reasonably expected and understood that Defendants would take, at a minimum, industry standard precautions to protect, maintain, and safeguard her Sensitive Information from unauthorized users or disclosure, and would timely notify her of any data security incidents related to the same. Plaintiff would not have used Defendants' services had she known that Defendants would not take reasonable steps to safeguard her Sensitive Information.

138. Plaintiff is very careful about sharing her sensitive PII and PHI. She has never knowingly transmitted unencrypted sensitive PII or PHI over the internet or any other unsecured source. Furthermore, Plaintiff stores any documents containing her sensitive information in a safe and secure location or destroys the documents. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

139. As a result of the Data Breach, Plaintiff anticipates making reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing financial statements, monitoring her credit information, and changing passwords on her various accounts.

140. Plaintiff anticipates spending significant time responding to the Data Breach and will continue to spend valuable time she otherwise would have spent on other activities, including but not limited to work and/or recreation.

141. Plaintiff Lepine suffered actual injury from having her sensitive information exposed and/or stolen as a result of the Data Breach including, but not limited to: (a) entrusting PII and PHI to Defendants that she would not have had Defendants disclosed they lacked data security practices adequate to safeguard their clients' patients' Sensitive Information; (b) damages

to and diminution in the value of her Sensitive Information–a form of intangible property that she entrusted to Defendants as a condition of receiving healthcare services; (c) loss of her privacy; (d) continuous imminent and impending injury arising from the increased risk of financial, medical, and identity fraud and theft; and (e) time and expense of her mitigation efforts as a result of the Data Breach.

142. Due to the Data Breach, Plaintiff anticipates spending considerable additional time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. This includes changing passwords, monitoring her medical history and health insurance information, and monitoring her other accounts for fraudulent activity.

143. Since the Data Breach Plaintiff is experiencing a great increase in spam calls and texts asking her to provide her personal financial information for various accounts she holds, including her credit card, Amazon and DirectTV accounts and others.

144. In addition, knowing that unauthorized actors accessed and/or stole her PII and PHI, which may be used for identity theft, fraud, and related purposes, has caused Plaintiff Lepine to experience feelings of anxiety, stress, and fear. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

145. Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has experienced anxiety and increased concerns for the loss of her privacy, as well as anxiety over the impact of cybercriminals accessing and using her PII and PHI.

146. Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from her PII and PHI being placed in the hands of unauthorized third parties/criminals.

147. Plaintiff Lepine has a continuing interest in ensuring that her PII and PHI, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

148. Plaintiff brings this action pursuant on behalf of herself and all others similarly situated and seeks to represent the following Nationwide Class:

> All individuals residing in the United States whose Sensitive Information was compromised by the Data Breach (the "Nationwide Class").

149. Plaintiff also seeks to represent the following California Subclass, subject to amendment as appropriate (together with the Nationwide Class, the "Class"):

> All individuals residing in the State of California whose Sensitive Information was compromised by the Data Breach (the "California Subclass").

150. The following people are excluded from the Class: (i) any judge or magistrate presiding over this action and members of their families; (ii) Defendants, Defendants' subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendants or their parent has a controlling interest, and their current or former officers and directors; (iii) persons who properly execute and file a timely request for exclusion from the Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) Plaintiff's counsel and Defendants' counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

151. Numerosity: The exact number of members of the Class is unknown but, upon information and belief, it is estimated to number in the tens or hundreds of thousands at this time, and individual joinder in this case is impracticable. Members of the Class can be easily identified

through Defendants' records and objective criteria permitting self-identification in response to notice, and notice can be provided through techniques similar to those customarily used in other data breach, consumer breach of contract, unlawful trade practices, and class action controversies.

152. Typicality: Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff, and the members of the Class, sustained damages arising out of Defendants' Data Breach, wrongful conduct and misrepresentations, false statements, concealment, and unlawful practices, and Plaintiff and members of the Class sustained similar injuries and damages, as a result of Defendants' uniform illegal conduct.

153. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with, or are antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

154. Commonality and Predominance: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a. Whether Defendants violated the laws asserted herein, including statutory privacy laws;

b. Whether Defendants had a duty to use reasonable care to safeguard Plaintiff's and Class Members' Sensitive Information;

c. Whether Defendants breached the duty to use reasonable care to safeguard Plaintiff's and Class Members' Sensitive Information;

d. Whether Defendants breached its contractual promises to safeguard Plaintiff's and Class Members' Sensitive Information;

e. Whether Defendants knew or should have known about the inadequacies of its data security policies and system and the dangers associated with storing Sensitive Information;

f. Whether Defendants failed to use reasonable care and commercially reasonable methods to safeguard and protect Plaintiff's and Class Members' Sensitive Information from unauthorized release and disclosure;

g. Whether the proper data security measures, policies, procedures, and protocols were in place and operational within Defendants' computer systems to safeguard and protect Plaintiff's and Class Members' Sensitive Information from unauthorized release and disclosure;

h. Whether Defendants took reasonable measures to determine the extent of the Data Breach after it was discovered;

i. Whether Defendants' method of informing Plaintiff and other members of the Class was unreasonable;

j. Whether Defendants' conduct was likely to deceive the public;

k. Whether Defendants is liable for negligence or gross negligence;

l. Whether Defendants' conduct, practices, statements, and representations about the Data Breach of the Sensitive Information violated applicable state laws;

m. Whether Plaintiff and Class Members were injured as a proximate cause or result of the Data Breach;

n. Whether Plaintiff and members of the Class were damaged as a proximate cause of the Data Breach;

o. Whether Defendants' practices and representations related to the Data Breach breached implied contracts with Plaintiff and members of the Class;

p. What the proper measure of damages is; and

q. Whether Plaintiff and members of the Class are entitled to restitutionary, injunctive, declaratory, or other relief.

155. Superiority: This cause is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual

members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions ensured.

156. A class action is superior to individual litigation because:

a. The amount of damages available to an individual plaintiff is insufficient to make litigation addressing Defendants' conduct economically feasible in the absence of the class action procedural device;

b. Individualized litigation would present a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system; and

c. The class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

157. Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Defendants failed to timely and adequately notify the public of the Data Breach;

b. Whether Defendants owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Sensitive Information;

c. Whether Defendants' security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

d. Whether Defendants' failure to institute adequate protective security measures amounted to negligence;

e. Whether Defendants failed to take commercially reasonable steps to safeguard patient Sensitive Information; and

f. Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

158. Finally, all members of the proposed Class are readily ascertainable. Defendants have access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE
### (On Behalf of Plaintiff & the Class)

159. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

160. Defendants required their clients' patients, including Plaintiff and Class Members, to submit their Sensitive Information to receive Defendants' medical services and/or obtain employment with Defendants.

161. By collecting and storing this data in their computer systems and networks, and sharing it and using it for commercial gain, Defendants owed a duty of care to use reasonable means to secure and safeguard their computer system—and Plaintiff's and Class Members' Sensitive Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendants' duty included a responsibility to implement processes

by which they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

162. Defendants owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, the personnel responsible for them, and their information technology partners adequately protected the Sensitive Information.

163. Plaintiff and the Class are a well-defined, foreseeable, and probable group of patients that Defendants were aware, or should have been aware, could be injured by inadequate data security measures.

164. A large repository of highly valuable healthcare and personal information is a foreseeable target for cybercriminals looking to steal and profit from that sensitive information. Defendants knew or should have known that, given their repository of a host of Sensitive Information for thousands of patients posed a significant risk of being targeted for a data breach. Thus, Defendants had a duty to reasonably safeguard Plaintiff's and Class Members' data by implementing reasonable data security measures to protect against data breaches. The foreseeable harm to Plaintiff and the Class of inadequate data security created a duty to act reasonably and safeguard the Sensitive Information.

165. After all, PII and PHI are highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Sensitive Information of Plaintiff and Class Members. Thus, Defendants knew, or should have known, the importance of exercising reasonable care in handling the Sensitive Information entrusted to them.

166. Defendants' duty of care to use reasonable security measures also arose as a result of the special relationship that existed between Defendants and their clients' patients, which is

recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendants were in a superior position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

167. Defendants' duty to use reasonable security measures under HIPAA required Defendants to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information."[30] Some or all of the medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

168. In addition, Defendants have a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.[31]

169. Defendants' duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendants are bound by industry standards to protect confidential Sensitive Information.

170. Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' Sensitive Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Sensitive Information;

b. Failing to adequately monitor the security of their networks and systems;

---

[30] 45 C.F.R. §164.530(c)(1).

[31] *See* 15 U.S.C. §45.

c. Failing to have in place mitigation policies and procedures;

d. Allowing unauthorized access to Plaintiff's and Class Members' Sensitive Information;

e. Failing to detect in a timely manner that Plaintiff's and Class Members' Sensitive Information had been compromised; and

f. Failing to timely notify Plaintiff and Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

171. Defendants breached their duty to exercise reasonable care in safeguarding and protecting Plaintiff's and the Class Members' Sensitive Information by failing to adopt, implement, and maintain adequate security measures to safeguard that information, despite known data breaches in the healthcare industry, and allowing unauthorized access to Plaintiff's and Class Members' Sensitive Information.

172. The failure of Defendants to comply with industry standards and federal regulations evidences Defendants' negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Sensitive Information.

173. But for Defendants' wrongful and negligent breach of their duties to Plaintiff and Class Members, their Sensitive Information would not have been compromised, stolen, and viewed by unauthorized persons. Defendants' negligence was a direct and legal cause of the theft of the Sensitive Information of Plaintiff and Class Members and all resulting damages.

174. It was foreseeable that Defendants' failure to use reasonable measures to protect Plaintiff's and Class Members' Sensitive Information would result in injury to Plaintiff and Class Members. Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry.

175. It was therefore foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' Sensitive Information would result in one or more types of injuries to Plaintiff and Class Members.

176. As a result of this misconduct by Defendants, the Sensitive Information of Plaintiff and Class Members was compromised, placing them at a greater risk of identity theft and of their Sensitive Information being disclosed to third parties without the consent of Plaintiff and the Class.

177. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

178. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to, *e.g.,* (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to Plaintiff and all Class Members.

## SECOND CAUSE OF ACTION
**NEGLIGENCE PER SE**
**(On Behalf of Plaintiff & the Class)**

179. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

180. Plaintiff alleges this negligence *per se* theory as alternative to Count I.

181. Pursuant to the laws set forth herein, including the FTC Act, HIPAA, the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C and the other sections identified above, Defendants were required by

law to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiff's and Class Members' Sensitive Information.

182. Pursuant to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Defendants have a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Sensitive Information. Specifically, this statute prohibits "unfair . . . practices in or affecting commerce," including (as interpreted and enforced by the FTC) the unfair practice of failing to use reasonable measures to protect confidential data.[32]

183. Moreover, Plaintiff and Class Members' injuries are precisely the type of injuries that the FTCA guards against. After all, the FTC has pursued numerous enforcement actions against businesses that—because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices—caused the very same injuries that Defendants inflicted upon Plaintiff and Class Members.

184. Pursuant to HIPAA, Defendants have a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' Sensitive Information. Defendants had a duty to use reasonable security measures to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information."[33] Some or all of the medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.[34]

---

[32] 15 U.S.C. §45

[33] 45 C.F.R. §164.530(c)(1)

[34] *Id.*

185. Pursuant to HIPAA, Defendants had a duty to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals, as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key."[35]

186. Plaintiff and Class Members are within the class of persons that the HIPAA was intended to protect. And the injuries that Defendants inflicted on Plaintiff and Class Members are precisely the harms that HIPAA guards against. After all, the Federal Health and Human Services' Office for Civil Rights ("OCR") has pursued enforcement actions against businesses which—because of their failure to employ reasonable data security measures for PHI— caused the very same injuries that Defendants inflicted upon Plaintiff and Class Members.

187. Under the Health Information Technology for Economic and Clinical Health Act ("HITECH"), Defendants have a duty to promptly notify "without unreasonable delay and in no case later than 60 calendar days after the discovery of a breach" the respective covered entities and affected persons so that the entities and persons can take action to protect themselves.[36]

188. Moreover, the HITECH states that, "[a] covered entity that accesses, maintains, retains, modifies, records, stores, destroys, or otherwise holds, uses, or discloses unsecured protected health information (as defined in subsection (h)(1)) shall, in the case of a breach of such information that is discovered by the covered entity, notify each individual whose unsecured protected health information has been, or is reasonably believed by the covered entity to have been, accessed, acquired, or disclosed as a result of such breach."[37]

---

[35] *See id.* §164.304.

[36] 42 U.S.C. §17932(d)(1).

[37] *Id.* §17932(a).

189. The HITECH further provides, "[a] business associate of a covered entity that accesses, maintains, retains, modifies, records, stores, destroys, or otherwise holds, uses, or discloses unsecured protected health information shall, following the discovery of a breach of such information, notify the covered entity of such breach. Such notice shall include the identification of each individual whose unsecured protected health information has been or is reasonably believed by the business associate to have been, accessed, acquired, or disclosed during such breach."[38]

190. Defendants' duty to use reasonable care in protecting confidential data arose not only because of the statutes and regulations described above, but also because Defendants is bound by industry standards to protect confidential PII and PHI.

191. Defendants owed Plaintiff and Class Members a duty to notify them within a reasonable time frame of any breach to their Sensitive Information. Defendants also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. This duty is necessary for Plaintiff and Class Members to take appropriate measures to protect their Sensitive Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps in an effort to mitigate the fallout of Defendants' Data Breach.

192. Defendants owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from its inadequate security protocols. After all, Defendants actively sought and obtained the Sensitive Information of Plaintiff and Class Members.

---

[38] *Id.* §17932(b).

193. Defendants breached their duties to Plaintiff and Class Members under the FTCA and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Sensitive Information. And but for Defendants' negligence, Plaintiff and Class Members would not have been injured. The specific negligent acts and omissions committed by Defendants include, but are not limited to:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Sensitive Information:

b. Failing to comply with—and thus violating—HIPAA and its regulations;

c. Failing to comply with—and thus violating—HITECH and its regulations;

d. Failing to comply with—and thus violating—FTCA and its regulations;

e. Failing to adequately monitor the security of its networks and systems;

f. Failing to have in place mitigation policies and procedures;

g. Allowing unauthorized access to Plaintiff's and Class Members' Sensitive Information;

h. Failing to detect in a timely manner that Plaintiff's and Class Members' Sensitive Information had been compromised; and

i. Failing to timely notify Plaintiff and Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

194. Defendants' failure to comply with applicable laws and regulations constitutes negligence *per se*.

195. But for Defendants' wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

196. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that it was failing to meet its duties and that Defendants' breach would cause Plaintiff and Class

Members to experience the foreseeable harms associated with the exposure of their Sensitive Information.

197. Simply put, Defendants' negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injuries-in-fact and damages. These injuries include, but are not limited to, the theft of their Sensitive Information by criminals, improper disclosure of their Sensitive Information, lost benefit of their bargain, lost value of their Sensitive Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendants' negligence. Moreover, injuries-in-fact and damages are ongoing, imminent, and immediate.

198. As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

199. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to, *e.g.,* (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to Plaintiff and all Class Members.

## THIRD CAUSE OF ACTION
### INVASION OF PRIVACY
### (On Behalf of Plaintiff & the Class)

200. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

201. Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and PHI and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

202. Defendants owed a duty to their clients' patients, including Plaintiff and the Class, to keep this information confidential.

203. The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class Members' PII and PHI is highly offensive to a reasonable person.

204. The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendants as part of receiving healthcare services, but they did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

205. The Data Breach constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

206. Defendants acted with a knowing state of mind when they permitted the Data Breach because they knew its information security practices were inadequate.

207. Defendants acted with a knowing state of mind when they failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

208. Acting with knowledge, Defendants had notice and knew that their inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

209. As a proximate result of Defendants' acts and omissions, the private and sensitive PII and PHI of Plaintiff and the Class were stolen by a third party and is now available for

disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

210. Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class because their PII and PHI are still maintained by Defendants with their inadequate cybersecurity system and policies.

211. Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendants' continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendants' inability to safeguard the PII and PHI of Plaintiff and the Class.

212. In addition to injunctive relief, Plaintiff, on behalf of herself and the other members of the Class, also seeks compensatory damages for Defendants' invasion of privacy, which includes the value of the privacy interest invaded by Defendants, the costs of future monitoring of her credit history for identity theft and fraud, plus prejudgment interest and costs.

## FOURTH CAUSE OF ACTION
### BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff & the Class)

213. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

214. Defendants required Plaintiff and Class Members to provide and entrust their Sensitive Information as a condition of obtaining services from Defendants and/or obtaining employment with Defendant.

215. Plaintiff and Class Members paid money to Defendants, directly and/or indirectly, in exchange for goods and/or services as well as Defendants' promise to protect their Sensitive Information from unauthorized disclosure.

216. Defendants promised to comply with legal and industry standards, including HIPAA, and to make sure that Plaintiff's and Class Members' Sensitive Information would remain protected.

217. Implicit in the agreement between Defendants and Plaintiff and Class Members was the obligation that both parties would maintain the Sensitive Information confidentially and securely.

218. Defendants had implied duties of good faith to ensure that the Sensitive Information of Plaintiff and Class Members in their possession was used only as authorized, such as to provide medical treatment and other medical benefits from Defendants.

219. Defendants had implied duties to protect the Sensitive Information of Plaintiff and Class Members from unauthorized disclosure or uses.

220. Additionally, Defendants implicitly promised to retain this Sensitive Information only under conditions that kept such information secure and confidential.

221. Through their course of conduct, Defendants, Plaintiff, and Class Members entered into implied contracts for Defendants to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' Sensitive Information.

222. Defendants solicited and invited Plaintiff and Class Members to provide their Sensitive Information as part of Defendants' regular business practices. Plaintiff and Class Members accepted Defendants' offers and provided their Sensitive Information to Defendants.

223. Plaintiff and Class Members fully performed their obligations under the implied contract with Defendants. Defendants did not. Plaintiff and Class Members would not have provided their confidential Sensitive Information to Defendants in the absence of their implied contracts with Defendants and would have instead retained the opportunity to control their Sensitive Information for uses other than medical treatment and obtaining medical benefits and services from Defendant.

224. Defendants breached the implied contracts with Plaintiff and Class Members by failing to safeguard and protect Plaintiff's and Class Members' Sensitive Information; failing to provide timely and accurate notice to Plaintiff and Class Members that their Sensitive Information was compromised as a result of the Data Breach; and violating industry standards as well as legal obligations that are necessarily incorporated into implied contracts between Plaintiff, Class Members, and Defendants.

225. Defendants further breached the implied contracts with Plaintiff and Class Members by failing to comply with its promise to abide by HIPAA.

226. Defendants further breached the implied contracts with Plaintiff and Class Members by failing to ensure the confidentiality and integrity of electronic protected health information Defendants created, received, maintained, and transmitted in violation of 45 C.F.R. §164.306(a)(1).

227. Defendants further breached the implied contracts with Plaintiff and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. §164.308(a)(1).

228. Defendants further breached the implied contracts with Plaintiff and Class Members by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 C.F.R. § 164.306(a)(2).

229. Defendants' failures to meet these promises constitute breaches of the implied contracts.

230. Furthermore, the failure to meet its confidentiality and privacy obligations resulted in Defendants providing goods and services to Plaintiff and Class Members that were of a diminished value.

231. Defendants' acts and omissions have materially affected the intended purpose of the implied contracts requiring Plaintiff and Class Members to provide their Sensitive Information in exchange for medical treatment and services and employment benefits.

232. As a direct and proximate result of Defendants' above-described breach of implied contract, Plaintiff and Class Members have suffered (and will continue to suffer) (a) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (b) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (c) loss of the confidentiality of the stolen confidential data; (d) the possibility of an illegal sale of the compromised data on the dark web; (e) lost work time; and (f) other economic and non- economic harm.

233. As a direct and proximate result of Defendants' above-described breach of contract, Plaintiff and Class Members are entitled to recover actual, consequential, and nominal damages.

## FIFTH CAUSE OF ACTION
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff & the Class)

234. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

235. This claim is pleaded solely in the alternative to Plaintiff's breach of implied contract claim.

236. Plaintiff and Class Members conferred a monetary benefit on Defendants by paying money for healthcare services and/or in the course of obtaining employment that relied on Defendants to render certain services, a portion of which was intended to have been used by Defendants for data security measures to secure Plaintiff and Class Members' Sensitive Information. Plaintiff and Class Members further conferred a benefit on Defendants by entrusting their Sensitive Information to Defendants from which Defendants derived profits.

237. Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiff and Class Members' Sensitive Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide adequate security.

238. Under the principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendants failed to implement appropriate data management and security measures that are mandated by industry standards.

239. Defendants acquired the monetary benefit, PII, and PHI through inequitable means in that Defendants failed to disclose the inadequate security practices, as described herein, and failed to maintain adequate data security.

240. If Plaintiff and Class Members knew that Defendants had not secured their Sensitive Information, they would not have agreed to give their money—or disclosed their data—to Defendants.

241. Plaintiff and Class Members have no adequate remedy at law.

242. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered—and will continue to suffer—a host of injuries, including but not limited to: (1) actual identity theft; (2) the loss of the opportunity to determine how their Sensitive Information is used; (3) the compromise, publication, and/or theft of their Sensitive Information; (4) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Sensitive Information; (5) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (6) the continued risk to their Sensitive Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Sensitive Information in their possession; and (7) future expenditures of time, effort, and money that will be spent trying to prevent, detect, contest, and repair the impact of Defendants' Data Breach.

243. The benefits that Defendants derived from Plaintiff and Class Members rightly belong to Plaintiff and Class Members. It would be inequitable under unjust enrichment principles

for Defendants to be permitted to retain any of the profit or other benefits they derived from the unfair and unconscionable methods, acts, and data security practices alleged in this Complaint.

244. Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds they received as a result of its conduct and the Data Breach alleged herein.

## SIXTH CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
### (On Behalf of Plaintiff & the Class)

245. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

246. In light of the special relationship between Defendants and Plaintiff and Class Members, whereby Defendants became guardians of Plaintiff's and Class Members' Sensitive Information, Defendants became fiduciaries by their undertaking and guardianship of the Sensitive Information, to act primarily for Plaintiff and Class Members: (1) for the safeguarding of Plaintiff's and Class Members' Sensitive Information; (2) to timely notify Plaintiff and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendants did and do store.

247. Defendants have a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of their relationship with their clients' patients to keep secure their Sensitive Information.

248. Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to diligently discover, investigate, and give detailed notice of the Data Breach to Plaintiff and the Class in a reasonable and practicable period of time.

249. Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiff's and Class Members' Sensitive Information.

250. Defendants breached their fiduciary duties owed to Plaintiff and Class Members by failing to timely notify and/or warn Plaintiff and Class Members of the Data Breach.

251. Defendants breached their fiduciary duties to Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' Sensitive Information.

252. As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Sensitive Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Sensitive Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Sensitive Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Sensitive Information in their continued possession; (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (vii) the diminished value of Defendants' services they received.

253. As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## SEVENTH CAUSE OF ACTION
### INVASION OF PRIVACY
### (On Behalf of Plaintiff & the California Class)

254. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

255. Plaintiff brings this claim individually and on behalf of the California Subclass (the "Class" for purposes of this count).

256. Plaintiff and the California Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII/PHI and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

257. Defendants owed a duty to their clients' patients, including Plaintiff and the California Class, to keep this information confidential.

258. The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and California Class members' PII/PHI is highly offensive to a reasonable person.

259. The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the California Class (or their third-party agents) disclosed their sensitive and confidential information to Defendants, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the California Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

260. The Data Breach constitutes an intentional interference with Plaintiff's and the California Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

261. Defendants acted with a knowing state of mind when they permitted the Data Breach because they knew their information security practices were inadequate.

262. Defendants acted with a knowing state of mind when they failed to notify Plaintiff and the California Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

263. Acting with knowledge, Defendants had notice and knew that their inadequate cybersecurity practices would cause injury to Plaintiff and the California Class.

264. As a proximate result of Defendants' acts and omissions, the private and sensitive PII/PHI of Plaintiff and the California Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the California Class to suffer damages (as detailed supra).

265. And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

266. Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the California Class since their PII/PHI are still maintained by Defendants with their inadequate cybersecurity system and policies.

267. Plaintiff and the California Class have no adequate remedy at law for the injuries relating to Defendants' continued possession of their sensitive and confidential records. A

judgment for monetary damages will not end Defendants' inability to safeguard the PII/PHI of Plaintiff and the California Class.

268. In addition to injunctive relief, Plaintiff, on behalf of herself and the other California Class members, also seeks compensatory damages for Defendants' invasion of privacy, which includes the value of the privacy interest invaded by Defendants, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT**
**Cal. Civ. Code §§ 1798.80 *et seq*.**
**(On Behalf of Plaintiff & the California Class)**

269. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

270. Plaintiff brings this claim individually and on behalf of the California Subclass (the "Class" for purposes of this count).

271. Cal. Civ. Code § 1798.81.5 provides that "[i]t is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information."

272. Section 1798.81.5(b) further states that: "[a] business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

273. Cal. Civ. Code § 1798.84(b) provides that [a]ny customer injured by a violation of this title may institute a civil action to recover damages." Section 1798.84(e) further provides that "[a]ny business that violates, proposes to violate, or has violated this title may be enjoined."

274. Plaintiff and the California Class Members are "customers" within the meaning of Civ. Code § 1798.80(c) and 1798.84(b) because they are individuals who provided personal information to Defendants and/or Defendants' clients for the purpose of obtaining a product and/or service from Defendants.

275. The personal information of Plaintiff and the California Class Members at issue in this lawsuit constitutes "personal information" under § 1798.81.5(d)(1) in that the personal information Defendants collect and which was, upon information and good faith belief, impacted by the cybersecurity attack includes an individual's first name or first initial and the individual's last name in combination with one or more of the following data elements, with either the name or the data elements not encrypted or redacted: (i) Social Security number; (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual; (iii) account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; (iv) medical information; (v) health insurance information; (vi) unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual.

276. Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard the Plaintiff's and Class Members' personal information and that the risk of a data breach or theft was highly likely. Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information of Plaintiff and the California Class Members.

Specifically, Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information of Plaintiff and the California Class Members from unauthorized access, destruction, use, modification, or disclosure. Defendants further subjected Plaintiff's and the California Class Members' nonencrypted and nonredacted personal information to an unauthorized access and exfiltration, theft, or disclosure as a result of Defendants' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

277. As a direct and proximate result of Defendants' violation of their duty, the unauthorized access, destruction, use, modification, or disclosure of the personal information of Plaintiff and the California Class Members included hackers' access to, removal, deletion, destruction, use, modification, disabling, disclosure and/or conversion of the personal information of Plaintiff and the California Class Members by the cyber attackers and/or additional unauthorized third parties to whom those cybercriminals sold and/or otherwise transmitted the information.

278. As a direct and proximate result of Defendants' acts or omissions, Plaintiff and the California Class Members were injured and lost money or property including, but not limited to, the loss of Plaintiff's and the California Class Members' legally protected interest in the confidentiality and privacy of their personal information, nominal damages, and additional losses described above. Plaintiff seeks compensatory damages as well as injunctive relief pursuant to Cal. Civ. Code § 1798.84(b).

279. Moreover, the California Customer Records Act further provides: "A person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of the breach of the

security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82.

280. Any person or business that is required to issue a security breach notification under the CRA must meet the following requirements under §1798.82(d):

a. The name and contact information of the reporting person or business subject to this section;

b. A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

c. If the information is possible to determine at the time the notice is provided, then any of the following:

   i. the date of the breach,

   ii. the estimated date of the breach, or

   iii. the date range within which the breach occurred. The notification shall also include the date of the notice;

d. Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided;

e. A general description of the breach incident, if that information is possible to determine at the time the notice is provided;

f. The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a social security number or a driver's license or California identification card number;

g. If the person or business providing the notification was the source of the breach, an offer to provide appropriate identity theft prevention and mitigation services,

if any, shall be provided at no cost to the affected person for not less than 12 months along with all information necessary to take advantage of the offer to any person whose information was or may have been breached if the breach exposed or may have exposed personal information.

281. Defendants failed to provide the legally compliant notice under § 1798.82(d) to Plaintiff and members of the California Class. On information and belief, to date, Defendants have not sent written notice of the data breach to all impacted individuals. As a result, Defendants have violated § 1798.82 by not providing legally compliant and timely notice to all California Class Members. Because not all members of the California Class have been notified of the Data Breach, members could have taken action to protect their personal information, but were unable to do so because they were not timely notified of the breach.

282. On information and belief, California Class Members affected by the breach have not received any notice at all from Defendants in violation of Section 1798.82(d).

283. As a result of the violations of Cal. Civ. Code § 1798.82, Plaintiff and California Class Members suffered incrementally increased damages separate and distinct from those simply caused by the breaches themselves.

284. As a direct consequence of the actions as identified above, Plaintiff and California Class Members incurred additional losses and suffered further harm to their privacy, including but not limited to economic loss, the loss of control over the use of their identity, increased stress, fear, and anxiety, harm to their constitutional right to privacy, lost time dedicated to the investigation of the breach and effort to cure any resulting harm, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal, financial, and payroll information disclosed, that they would not have otherwise

incurred, and are entitled to recover compensatory damages according to proof pursuant to § 1798.84(b).

**NINTH CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT**
**Cal. Civ. Code §§ 56, *et seq*.**
**(On Behalf of Plaintiff & the California Class)**

285. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

286. Plaintiff brings this claim individually and on behalf of the California Subclass (the "Class" for purposes of this count).

287. Under the California Confidentiality of Medical Information Act, Civil Code §§ 56, et seq. (hereinafter referred to as the "CMIA"), "medical information" means "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment." Cal. Civ. Code § 56.05.

288. Additionally, Cal. Civ. Code § 56.05 defines "individually identifiable" as meaning that "the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the identity of the individual." Cal. Civ. Code § 56.05.

289. Under Cal. Civ. Code § 56.101(a) of the CMIA,

> (a) Every provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein.

> Any provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36.
> Cal. Civ. Code § 56.101.

290. At all relevant times, Defendants were health care contractors within the meaning of Civil Code § 56.05(d) because they are a "medical group, independent practice association, pharmaceutical benefits manager, or medical service organization and is not a health care service plan or provider of health care." In the alternative, Defendants are health care providers within the meaning of Civil Code § 56.06(b) because they maintain medical information as defined by Civil Code § 56.05.

291. Plaintiff and California Class Members are Defendants' patients, as defined in Civil Code § 56.05(k).

292. Plaintiff and California Class Members provided their personal medical information to Defendant.

293. At all relevant times, Defendants created, maintained, preserved, stored, abandoned, destroyed, or disposed of medical information in the ordinary course business.

294. As a result of the Data Breach, Defendants have misused, disclosed, and/or allowed third parties to access and view Plaintiff's and California Class Members' personal medical information without their written authorization compliant with the provisions of Civil Code §§ 56, et seq. As a further result of the Data Breach, the confidential nature of Plaintiff's medical information was breached – as a result of Defendant's negligence. Specifically, Defendants knowingly allowed and affirmatively acted in a manner that actually allowed unauthorized parties to access and view Plaintiff's and California Class Members' Private Information, which was viewed and used when the unauthorized parties engaged in the above-described fraudulent activity.

Defendants' misuse and/or disclosure of medical information regarding Plaintiff and California Class Members constitutes a violation of Civil Code §§ 56.10, 56.11, 56.13, and 56.26.

295. As a direct and proximate result of Defendants' wrongful actions, inaction, omissions, and want of ordinary care, Plaintiff's and California Class Members' personal medical information was disclosed without written authorization.

296. By disclosing Plaintiff's and California Class Members' Private Information without their written authorization, Defendants violated California Civil Code § 56, *et seq.*, and their legal duty to protect the confidentiality of such information.

297. Defendants also violated Sections 56.06 and 56.101 of the California CMIA, which prohibit the negligent creation, maintenance, preservation, storage, abandonment, destruction or disposal of confidential personal medical information.

298. As a direct and proximate result of Defendants' wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff's and California Class Members' personal medical information was viewed by, released to, and disclosed to third parties without Plaintiff's and California Class Members' written authorization.

299. As a direct and proximate result of Defendants' above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and its violation of the CMIA, Plaintiff and California Class Members are entitled to (i) actual damages, (ii) nominal damages of $1,000 per Plaintiff and each California Class Member, (iii) punitive damages of up to $3,000 per Plaintiff and each California Class Member, and (iv) attorneys' fees, litigation expenses and court costs under California Civil Code § 56.35.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Lepine, on behalf of herself and all persons similarly situated, prays for judgment in her favor and against Defendants, and respectfully requests that this Honorable Court enter an order:

A. certifying this action as a Class action and appointing Plaintiff as Class Representative and her counsel as Class Counsel;

B. granting equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Sensitive Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

C. granting equitable relief compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Sensitive Information compromised during the Data Breach;

D. granting equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

E. requiring Defendants to pay for not less than three years of credit monitoring services for Plaintiff and the Class;

F. awarding actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

G. awarding punitive damages, as allowable by law;

H. awarding attorneys' fees and costs under the common fund doctrine, and any other applicable law;

I. awarding costs and any other expense, including expert witness fees, incurred by

Plaintiff in connection with this action;

J. awarding pre- and post-judgment interest on any amounts awarded; and

K. all such other and further relief as this court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: September 12, 2025

Respectfully submitted,

*/s/ James J. Bilsborrow*
James J. Bilsborrow
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, New York 10003
(212) 558-5500
jbilsborrow@weitzlux.com

David S. Almeida*
New York Bar No. 3056520
**ALMEIDA LAW GROUP LLC**
Elena A. Belov*
New York Bar No. 40891849
W. Webster Ave.
Chicago, Illinois, 60614
Tel.: (708) 437-6476
david@almeidalawgroup.com
elena@almeidalawgroup.com

**Pro Hac Vice* to be submitted

*Attorneys for Plaintiff and the Putative Class*